The next case for oral argument this morning is 22-2696 United States v. Salazar. Good morning. Good morning and may it please the court. Tom Drysdale and I'm here today representing Arnez Salazar. Five uniformed police officers entered a bar to execute a traffic warrant. They surrounded Mr. Salazar. Two of them grabbed his arms. Another one started handcuffing him while another one started rifling through a jacket that was on the back of a bar stool and unconnected to his person. The only question that's really before this court today is whether under United States v. Gant, that is a valid search incident to arrest. Now, I want to be clear. There's two issues here. First, the question is whether a reasonable officer would have believed that Mr. Salazar could have gained access to that weapon. Not whether we can dream up some hypothetical situation where he could get to the weapon. Would a reasonable officer believe under these facts that he could gain access to that weapon? And the second is this is governed by Gant. And Gant is a conjunctive standard. It says in the holding that a container incident to arrest can be searched when it is unconnected to the person if the arrestee is unsecured and within reaching distance of the container. And that's really where the problem is in this case. The government and the district court both really just said, well, he was close to the jacket so he could access it. Game over. The district court doesn't really even do any analysis on his secured status outside of mentioning in passing that he was handcuffed. I guess your case really does turn, doesn't it, on whether we accept what you've just said, that there is a conjunctive standard. Standard being the word of emphasis. Was the Supreme Court really setting forth a standard there or was it simply trying to describe a situation where a perpetrator might be within reach of the weapon? Well, Your Honor, I think it's pretty clear in Gant. It says we hold that an arrestee to search a container incident arrest, an arrestee must be unsecured and within reaching distance. And this court multiple times has quoted that conjunctive standard. That's soundbite research. What I'm trying to get to is what is the underlying concern of the Gant case? What's the line Gant wants the police officer to draw between permissible and impermissible? Absolutely. I think what Gant is trying to get at is to make sure that the police aren't searching individuals who are fully secured, no matter how close they are to something. If the officers have them entirely under control, I think that goes to Justice Scalia's statement in the concurrence, the police almost always... Even though it was Justice Scalia and he's, you know... Sure. That's a concurring opinion. Right. But it works. And when he says the police almost always have better ways to secure a situation, like moving the defendant away from the container. So I think that's what they're getting at. We don't want you searching just because he's close if he's fully secured and vice versa. How do you distinguish this court's opinion in Tejada? I actually think this is consistent with that case because basically what the court said in Tejada is that we do believe it's reasonable under those circumstances that the defendant could have gotten to the entertainment center. Right. What's unreasonable is that the defendant could have gotten inside the entertainment center and accessed the bag, inside of the bag. So I think, although I... How do you differentiate the entertainment center in Tejada from the coat here? And I think what I'm saying is maybe under some plausible set of circumstances, Mr. Salazar could have made his way to the coat. I think it would have been almost impossible. But the question is whether he could have accessed the weapon. Could he, with officers holding him and his hands cuffed behind his back, even if he got over to the coat or the entertainment center, gotten inside of the coat to access a weapon because the gun is in the pocket? And that's where the entertainment center and the bag comes into play. And so I actually think it's consistent. But the bag in the entertainment center was something separate that was... It was a travel bag and it was concealed, I believe, or zipped or locked. It was zipped. So you couldn't get into it. Unlike here, the pocket, the coat wasn't zipped. It was open. It's still the inside pocket. It's blocked by the back of the bar stool. And there's officers literally holding each one of his arms. And so the question is, is it reasonable to believe that he's going to be able to get past all of those officers and get inside of that coat before someone stops him? They're actively searching inside of the coat at the time. It's just simply inconceivable that they're not going to stop him. And they also controlled the situation. Why didn't they just move him three or four feet further away from the jacket? That's what Justice Scalia is getting at. All they had to do was move him. There's no crowd control issues here, which the district court doesn't even address. But there's only three other people in the bar at the time the police enters. And the government calls it eight. I'm not sure where they're getting that number. It's three. But is there anything that imposes the obligation on law enforcement officers in a very fluid situation like that to actually try to move him? I don't think they have an obligation to move him. But they certainly do have the obligation only to conduct a search incident to arrest if he's unsecured and within reaching distance. What's unsecured? Well, it's a totality of the circumstances, Your Honor. I don't necessarily, I think I would agree that handcuffs don't automatically say somebody's secured. I think we're pretty clear that the case is unsecured. I think that's the general understanding. Yes. But I think we look at the whole circumstances here. And that's why there's all these factors, particularly the Tenth Circuit laid them out. But we look at how many officers there are, what else are they doing, who else are they controlling. And in this case, they're What kind of a defendant they have, too. What kind of a defendant they have. And I think the district court makes it very clear that Mr. Salazar was, quote, agitated. And probably he was pulled off of a bar stool while he was on the phone. But the district court also makes it very clear that he was not resisting arrest. He wasn't pulled off. That's a little bit of a stretch. I've seen the video. He wasn't pulled off. It might be, Your Honor. But they did have him by both arms, and he didn't know what was going on. So I think he was, I think confused might be more than agitated. Was he confused when asked, is this your coat? I don't think so, Your Honor, no. No. But that goes to the abandonment issue, which frankly really isn't an issue in this case. The search is either good or it's bad. And it doesn't really matter whether or not his words of abandonment were spoke. Because that reaches either a search incident to arrest or it's not. Is this case distinguishable if it's not from Tejada but from Leo? No. This is spot on on Leo. This is exactly what happened in Leo. When you're looking at the part of the court's analysis in Leo where the government argued a valid protective sweep under Michigan v. Long, a protective sweep uses the same standard as a search incident to arrest. Does a reasonable officer believe that the defendant could gain access to a weapon? And this court under that standard in Leo said no. And that's a two-to-two officer-to-defendant ratio. But Leo involved a Terry step, not an arrest. And there's no difference. That part of the analysis, but the government did argue a valid protective sweep under Long, which involves the same standard, and this court said no. It's the same standard, and the result should be the same. As a Terry step? As the Long part of the analysis because the standard is the same. It's the same standard under Michigan v. Long as it is under a valid search incident to arrest. If there's nothing else, I'll save my last two minutes. Thank you. Thank you. Good morning. May it please the court. Good morning, Your Honors. Jeff Kinstra on behalf of the United States. The district court didn't clearly err in finding that it would have been possible for the defendant to gain possession of the loaded firearm in the jacket he was standing next to at the time of the arrest and at the time of the search because the firearm and the jacket were therefore within the defendant's reaching distance or the area from within which he might gain possession of a firearm. The officers were entitled to search it incident to the defendant's arrest. Do you mind if we start kind of where we just stopped with the previous line of questioning regarding the Leo case? Sure. So I guess three things I'd like to say about Leo. The first is that the defendant was arguing that the scope of a Michigan v. Long search is the same. Leo expressly held that Michigan v. Long did not apply because Leo did not involve a vehicle search. The second thing I'd note is that the defendant in Leo accepted that it would have been appropriate for the officers to pick up the backpack, pat it down for weapons. His complaint was that they had opened it up and dumped out all the contents. But here the officers discovered the firearm when Officer Fuller picked it up and felt the firearm through the side of the jacket. So this case is comfortably within what Leo accepted or at least assumed would have been appropriate. And then the other distinction is the court's factual finding. In Leo, the district court did not find that the backpack was within the defendant's reaching distance at the time of the search. Instead, it was essentially making a very different analysis under Michigan v. Long where it was basically holding that because it was only a Terry stop, that by the end of the encounter, the backpack would be returned to the defendant. And at that time, it would be within his reaching distance. But this court rejected that for the same reasons that it found that Michigan v. Long didn't apply. But here we do have a factual finding by the district court that, in fact, not only was the jacket within the defendant's reaching distance, but that it specifically would have been possible for the defendant to obtain possession of the firearm that was inside that jacket. Judge Ripple, to your question about whether Gant was describing a standard or just describing a situation in which it arose, the answer I suggest is it's offering a description and not offering a legal standard when it's referring to secureness and reaching distance. And there are three reasons I'd offer for that. The first is that that's what the Supreme Court has repeatedly said. In Kimele, for example, the Supreme Court said that officers can conduct a search incident to arrest in, quote, the area into which an arrestee might reach in order to grab a weapon. Or as it explained on the same page, the area from within which he might gain possession of a weapon. So then in Gant, the court said that the Kimele standard continues to apply. The wrinkle in Gant really was that it said that the inquiry is at the time of the search instead of at the time of the arrest. So Gant said that the Kimele standard about where officers can search at a given time continues to apply. And on page 351 in its conclusion, it very clearly articulated its legal rule. And the rule there was that the police may search a vehicle incident to a recent occupant's arrest if the arrestee is within reaching distance of the vehicle at the time of the search. Now, the second point is context. And context, I think, is the really critical point in understanding the reference to the defendant being unsecured and within reaching distance. And that's because the defendant in Gant was not only handcuffed, he was locked in the back of a police car. So at that point, there really is no area from within which he might gain possession of a weapon. That's been reduced to zero. And that's the end of the story. So that's an easy case. In circumstances where that's not the case, where a defendant is not locked in the back of a police car, at that point, there's at least some area from within which he might gain possession of a weapon. And the question then is whether the item to be searched is within that area. But really, at that point, the courts would just be asking the same question two times over, because certainly if a defendant is within reaching distance of a firearm, he's not secured. And by the same token, that very same fact would authorize the search incident to arrest. Which brings me to my third point, which is essentially a practical one. If we were to assume that there is a new independent securedness inquiry from Gant, how would we define it, except just by going straight back to Kymel and asking whether this is someone who's within reaching distance of a firearm. And at that point, again, we're just asking the same question two times over. So as the Third Circuit explained in Shaker, I think it got the issue exactly right. In referencing securedness and reaching distance, Gant was really just offering two applications of the same legal standard, different matters of degree, and applying that same standard. But it's really one question, and I agree with my colleague on that. It's a totality of the circumstances inquiry that looks to all the factors that inform whether the defendant could gain access to a firearm or to evidence. And I think it should come as no surprise when we're talking about reaching distance, or the area from which he might gain possession of a firearm, that the distance is a very important consideration. I think every case that either party cites on this issue, resolving the issue in either direction, prominently discusses the distance between the defendant and the item to be searched. And here that weighs extremely heavily in the government's favor. As the district court found, as a matter of fact, reflected on page 4 of the government's appendix, the defendant was standing literally right next to the jacket. So his hands, in other words, were inches away from a loaded firearm. Now, of course, that's not the only circumstance. It's not the only thing the district court considered. And so, as my colleague alluded to, courts do consider other things, like whether a defendant is in handcuffs, if he's standing upright or laying face down on the ground, the number of officers present, their location relative to the defendant and the item to be searched, any other factors that may create a volatile situation or unpredictability. But the district court did consider all those things here. It acknowledged that the defendant was in handcuffs. But again, the defendant was only standing literally right next to the jacket that had a loaded firearm in the pocket. So even though his hands were behind his back, I think there's no doubt that the handcuffs reduced his reaching distance. But the key point is that they didn't place the firearm outside of that reaching distance. It's really the same analysis for the presence of the officers. Undoubtedly, the presence of five officers in a semicircle around the defendant reduced the area from within which he might gain possession of the firearm. But again, they didn't place the firearm outside of that area because none of the officers were between the defendant and the jacket, and the defendant was immediately right next to it. So the district court also noted this was a very fluid situation, as your honors have alluded to. It's a very quick, quickly evolving situation in a public location. The defendants immediately agitated, speaking in a raised voice, even as the officers remained calm. And there are multiple bystanders nearby. It's in a bar. People are coming and going. And all of which supports the district court's conclusion that this was a very fluid situation. And given the defendant's immediate proximity to a loaded firearm during the course of a custodial arrest, given that proximity and the fluidity of the situation, neither the use of handcuffs nor the presence of officers made it impossible for the defendant to gain access to the firearm. The defendant suggests that the district court was engaging in fanciful hypotheticals. That's simply not consistent with the district court's analysis. And I'd also refer your honors to page 7 to 8 of the suppression transcript, where the district court itself said that the inquiry, as the parties were beginning to present evidence, the court articulated its own understanding of the legal rule, saying the question is whether it was, whether it could reasonably be expected that the defendant could, if he had wished, made a legitimate effort to get the gun in his pocket. Mr. Minister, I'm sorry, we have limited time. Can we talk through if the search incident to arrest was not valid, the abandonment argument that you raised? Sure. So there's no question that before Officer Fuller picked up the jacket and discovered the firearm, the defendant said that the jacket wasn't his. This is before the officer picks it up? Before Officer Fuller picked up the jacket, the defendant said at least three times that the jacket wasn't his. So from that point forward, he lacks any legitimate expectation of privacy in the jacket, unless he can show that... But what about the fact that before the officers picked it up, they had looked in the pocket? So the question then would be if the defendant's abandonment was the result of unlawful police activity. And so really at the end of the day, the abandonment is a rather narrow alternative argument because it just brings us back to the search incident to arrest just at a slightly prior point in the encounter, when Officer Raschert reached into the right hand pocket instead of when Officer Fuller picked it up. But for all the reasons the government has argued already, that was equally justified as a search incident to arrest. I just note a couple of factual points in closing. The defendant suggested the defendant was actually being held by two officers at the time of the search. That's not accurate. When the officers first made contact with him, two officers placed their hands behind his back. But at the time of the search, as your honors can see on page seven of the government's response brief, he was not being held by two officers. As to the number of occupants, the picture on page 15 of the defendant's reply brief shows all eight of the people the government was referring to, including two people in the upper left hand corner by the video screens. And unless your honors have any further questions, the government would rest on its brief. Thank you. Thank you. Mr. Jaistel. So as to the number of people, if there's eight people in that picture, the government's counting the police. The police aren't people that the police have control. There were three people in the crowd they had to control, not counting Mr. Salazar. He was indeed being held at the search. The government's argument that he was not being held at the time of the search is premised on the two search theory, because when they made the first reach into the pocket, which was immediate, which the district court found, there was an officer on each of his arms holding it. And the court can see that in the video. It's not just reaching distance. We cannot ignore half of a Supreme Court holding. And even if that's not a standard, the other approach is a sliding scale, where the court still has to look at secured status. And the problem with the government's argument is the government acknowledges up here that there are other factors to consider, like crowd control and the ratio of police to the defendant. But the problem is the district court didn't consider any of them. It's not in the district judge's rationale anywhere. The district judge literally says he was next to the jacket. He did have handcuffs on, but he was next to the jacket. Therefore, this is a valid search incident to arrest. The court makes no inquiry into any other factors here as to ratio of the police officers, the fact that they were holding him, that the crowd control issues were none. None of that is part of the analysis. It's just he was close. They can search. That is not the standard. It is, again, even under a sliding scale approach, we have to take into account that there were many, many officers in this bar. He had his hands cuffed behind his back, and literally there's just no reasonable person who could believe that he could get inside of this coat and obtain this weapon. And we ask that the district court's order be reversed. Thank you, Mr. Drysdale. The case will be taken under advisement.